# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA
# THIRD DIVISION

Matthew Aaron Sawyer,　　　　　　　　　　　　　　　　　Civil No. 04-4689 MJD/AJB

　　　　　　　　　　　Petitioner,

v.　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

Lisa J.W. Hollingsworth, Warden,

　　　　　　　　　　　Respondent.


　　　　This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Docket No. 1]. The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). Petitioner is a federal prisoner incarcerated at FCI–Sandstone, Minnesota. He was sentenced in the United States District Court for the Western District of Missouri to a term of 37 months for possession with intent to distribute cocaine and his current projected release date is July 12, 2005. Mr. Sawyer asserts that he was denied due process in regard to a disciplinary proceeding which arose out his refusal or inability to produce a urine sample while he was housed at the Federal Prison Camp at Leavenworth, Kansas. The proceeding resulted in the petitioner losing 27 days of good time credit. In this action he seeks expungement of the disciplinary record and restoration of the lost good time credit. The respondent acknowledges that the prisoner has exhausted his administrative remedies[1] and

---

[1] Declaration of Kara Christianson [Docket No. 9].

opposes the petition on the merits.

**<u>Background and Claims</u>**

On March 10, 2003, petitioner Matthew Sawyer was incarcerated at FPC Leavenworth when prison staff conducted saturation urinalysis drug screening of inmates at the facility. Saturation drug testing is a method whereby a large group of inmates are targeted for testing.[2] Mr. Sawyer was unable to produce a sample within the two hours allotted under the testing policy,[3] though he was permitted to consume water during this time.[4] Petitioner was one of 14 inmates who failed to provide a urine sample after two hours and those prisoners were therefore given an additional two hours in which to comply.[5] Mr. Sawyer insists that during this time he told corrections officers that he had problems urinating "on demand," and that he repeatedly asked that alternative processes such as blood testing or dry celling[6] be implemented, but his requests were denied or ignored. He did not advise officers that he was unable to urinate because of a medical problem. In any event, the petitioner

---

[2] Petition, Exh. 3 & 4, Program Statement 6060.08, <u>Urine Surveillance and Narcotic Identification</u>, page 4. [Docket No. 1].

[3] Id.

[4] Id. The policy provides that the inmate shall be offered eight ounces of water at the beginning of the two-hour period. Petitioner contends that he was provided only four ounces of water and that he was verbally harassed by corrections officers during this time.

[5] Id., Exh. 7, Memorandum dated March 10, 2003, redacted listing of inmates who failed to provide a urine sample.

[6] Program Statement 6060.08 provides that "[s]taff may consider supervising indirectly an inmate who claims to be willing but unable to provide a urine sample under direct visual supervision. For example, this might be accomplished by allowing the inmate to provide the sample in a secure, dry room after a thorough search has been made of both the inmate and the room." Id., Exh. 3 & 4.

did not provide the necessary urine specimen and was therefore subjected to disciplinary proceedings for refusing a urine sample.[7]

The petitioner was informed of the charge against him by incident report delivered on March 11, 2003.[8] A preliminary investigation was conducted and the matter was referred to the Unit Discipline Committee (UDC) which held a hearing on March 12, 2003.[9] The petitioner told the UDC that he "can't go when [ ] told to go," but he did not advise the UDC of any particular medical condition that prevented him from giving a urine sample.[10] The matter was thereafter referred to Disciplinary Hearing Officer (DHO) Steve Lacy for further hearing.[11]

Hearing before the DHO was held on March 13, 2003. The prisoner was advised of his rights and was offered the assistance of Correctional Counselor Randy Clark to represent him in the disciplinary hearing.[12] Mr. Sawyer declined to be represented by Clark due to perceived animosity and a verbal request for another staff representative was denied.[13] As a result of the prisoner's refusal to accept Mr. Clark as his representative in the discipline proceeding, he was deemed to have waived his

---

[7] Petition, Exh. 8.

[8] Declaration of Steve Lacy, DHO, Attachment A [Docket No. 11].

[9] Id.

[10] Id.

[11] Id.

[12] Id.

[13] Affidavit of Matthew Aaron Sawyer, para. 8(a) [Docket No. 15].

right to representation.[14] Indeed, the petitioner executed an express written acknowledgment and waiver of his right to have a staff representative and his right to call witnesses at the hearing,[15] though he contends that he did not actually waive his right to call witnesses, but rather, that his ability to call witnesses was precluded as a result of resistance from his initially appointed representative, Randy Clark.[16] At the hearing the petitioner expressly stated, "the report is true, I didn't provide the sample in the time frame."[17] Based upon greater weight of the evidence presented at the hearing, the DHO determined that the prisoner committed the charged offense of refusing to provide a urine sample or to take part in other drug-abuse testing and the petitioner was sanctioned with the loss of 27 days good conduct time, 30 days disciplinary segregation, 45 days loss telephone and commissary privileges and 180 days loss of visitation privileges.[18]

       In the petition now before the Court the prisoner alleges that he was denied his right to due process as a consequence of the denial of an adequate and/or impartial staff representative, as well as the denial of his right to call witnesses because of his inability to identify witnesses by name. Petitioner further alleges that did not receive due process because he was not able to produce

---

[14] Declaration of Steve Lacy, DHO, Attachment A.

[15] Declaration of Steve Lacy, DHO, Attachment A, Notice of Disciplinary Hearing dated March 12, 2003.

[16] Petitioner's Brief Opposing Respondent's Opposition Brief to Petitioner's 28 U.S.C. § 2241 Petition, page 7 [Docket No. 14].

[17] Declaration of Steve Lacy, DHO, para. 7. Petitioner responds by insisting that the DHO "conveniently" selected the statement to the exclusion of others. Affidavit of Matthew Aaron Sawyer, para. 11(a).

[18] Id., para. 8.

documentary evidence in the short time between the incident and the hearing without the assistance of a willing staff representative. In this habeas corpus action the prisoner alleges that he suffers from paruresis, i.e. bashful bladder syndrome, and he has submitted an Internet published article on the subject.[19] Respondent opposes the petition, asserting that there was sufficient evidence to support the DHO's determination that Mr. Sawyer had committed the charged offense and that the petitioner received all the process to which he was entitled.

**Due Process**

A prisoner must be afforded at least some procedural due process protections before being deprived of good-time. Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975 (1974). Nonetheless, a prisoner is not entitled to the full panoply of procedural rights that accompanies a criminal prosecution when that prisoner is facing a loss of good-time credits. Id., 94 S.Ct. at 2975. Constitutional due process mandates only that a prison disciplinary action satisfy the simple procedural requirements prescribed in Wolff. Therefore, prisoners facing a loss of good-time credits must be given (1) advance written notice of the disciplinary charges, (2) an opportunity to present witness testimony and other evidence when such allowance is consistent with safety and correctional goals, and (3) a written statement of reasons for the disciplinary action taken. Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir.). See also Allen v. Reese, 52 Fed. Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied, as he was given (i) written notice of the charges against him, (ii) the right to call witnesses, and (iii) a written report of the DHO's decision). In

---

[19] Petition, Exh. 5. Internet cite: http://www.paruresis.org.

addition, due process requires that there be "some evidence" in the record supporting the disciplinary determination. Espinoza at 952 (citing Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985)).

In this instance, the record does not support the petitioner's claim that he was disciplined in violation of his due process rights. To the contrary, the record shows that Mr. Sawyer received at least the minimal procedural benefits prescribed by Wolff. Petitioner was provided an incident report which afforded him written notice of the charges and he makes no claim to the contrary.[20] Next, he was present at proceedings before a unit disciplinary committee[21] and a hearing before a disciplinary hearing officer.[22] The petitioner was advised of his rights prior to hearing,[23] including the right to a staff representative and the right to present witnesses and documentary evidence,[24] and he executed a written waiver of those rights.[25] Finally, the prisoner was provided a written report of the hearing officer's decision in which DHO Lacy indicated that the inmate admitted the charges, stating "the [incident] report is true, I didn't provide the sample in the time frame."[26] From

---

[20] Petition, Exh. 8, Incident Report dated March 11, 2003.

[21] Id. (Incident Report, Part II–Committee Action).

[22] Id., Exh. 10, Discipline Hearing Officer Report dated March 13, 2003.

[23] Id., Exh. 8 and Lacy Declaration, Attachment A, Inmate Rights at Discipline Hearing.

[24] Lacy Declaration, Attachment A. Inmate Rights at Discipline Hearing.

[25] Id., Notice of Disciplinary Hearing dated March 12, 2003.

[26] Id., Discipline Hearing Officer Report.

a procedural standpoint the record indicates that the petitioner was disciplined in accordance with 28 CFR Part 541, as outlined in Bureau of Prisons Program Statement 5270.07, Inmate Discipline and Special Housing Units.[27]  The Court concludes that petitioner has not shown any alleged deviation from the regulations that was constitutionally significant.  Furthermore, petitioner has not shown any specific prejudice that is directly attributable to any alleged deviation from the prescribed procedures.  In short, the record shows that Petitioner was afforded the basic procedural safeguards required by Wolff, and this Court can require no more on petition for habeas corpus relief.

Petitioner's specific claims are largely evidentiary in nature in that he contends that he was not able to obtain favorable drug-testing evidence because he was not allowed to submit to a blood test or provide a dry cell urine sample; that he was not provided opportunity to obtain and present documentary evidence relating to the nature of the medical problem that prevented him from providing a urine specimen; that he was not able to identify witnesses without assistance; and that he was denied a staff representative's help in addressing these evidentiary concerns.  The Supreme Court has held, however, that the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record."  Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985)).  This standard is satisfied –

> "if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106, 47 S.Ct. 302, 304 (1927)].  Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.

---

[27] Declaration of Kara Christenson, Attachment B [Docket No. 10].

> Instead, <u>the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board</u>."

105 S.Ct. at 2774 (emphasis added). The findings of a prison disciplinary authority cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. <u>Id.</u> at 2775. The Court in <u>Hill</u> recognized that prison discipline proceedings take place in a highly charged environment and often require that prison officials take swift action on the basis of evidence that might be insufficient in less exigent circumstances. <u>Hill</u>, 105 S.Ct. at 2774. Consequently, "[r]evocation of good time credits is not comparable to a criminal conviction,... [citation omitted], and neither the amount of evidence necessary to support such a conviction,... [citation omitted], nor any other standard greater than some evidence applies in this context." <u>Id.</u> Simply stated, where there is at least some evidence to support the hearing officer's decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met.

In this matter the Court finds that the minimal "some evidence" standard is clearly met. The DHO was presented with the evidence recited in the incident report whereby the prisoner was ordered to provide a urine sample which he was unable to provide within the allowed time. Furthermore, at his disciplinary hearing Mr. Sawyer expressly told the DHO that the report was true and that he did not provide a sample within the time allowed. This evidence is sufficient to support the DHO's decision and assessment of sanctions on the charge of refusing a urine sample. With respect to the petitioner's contention that he requested alternative blood testing or dry celling, there is no requirement that those options be provided under BOP Policy Statement 6060.08 or any other identified policy statement, and Court finds that the failure to make testing accommodations does not

8

carry significant due process implications in light of the exigencies existing in the prison environment. See Superintendent v. Hill, 105 S.Ct. at 2774. With regard to the prisoner's assertions that he did not "voluntarily" sacrifice his right to the assistance of a staff representative or the right to present witnesses and documentary evidence, his assertions have no factual support in the record and are belied by signed waivers. Moreover, petitioner proffers no witness testimony that would negate his admission that he did not provide a urine sample, and corroboration of his offers to submit to alternative testing is of no consequence. Likewise, the documentary materials now offered regarding the medical condition known as paruresis is inconsequential, particularly in the absence of any evidence indicating that the petitioner has actually been medically diagnosed with the affliction and in light of the petitioner's failure to advise either the saturation testing officers or the hearing officer of any specific medical problem.

The Court concludes that the record in this case provides at least some evidence to support the DHO's determination that the petitioner refused to provide a urine sample, and the prisoner was not denied the appropriate opportunity to explain his position, present evidence, or otherwise defend himself. Therefore, the Court finds no constitutional error in the DHO's decision to sanction the petitioner with the loss of 27 days good conduct time and finds no justification for expungement of the disciplinary record or reinstatement of the lost good time credit. See Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir.) (the outcome of prisoner disciplinary proceedings will be upheld by the federal courts if it is supported by some evidence in the record).

Based upon the foregoing discussion, along with the petition, exhibits, affidavits, and memorandums:

**IT IS HEREBY RECOMMENDED** that the petitioner Matthew Aaron Sawyer's

Petition for Writ of Habeas Corpus pursuant to Title 28 U.S.C. § 2241 be **dismissed**. [Docket No. 1].

Dated:   May 12, 2005

  s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

      Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. Written objections shall be filed with the Clerk of Court and served upon opposing parties before May 25, 2005. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.